UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGELA OXENDINE,

Plaintiff,

-against-

CHAMBERLIN EDMONDS & ASSOCIATES, INC.,

Defendant.

Case No.

Plaintiff, Angela Oxendine, by her attorneys, Cooper Erving & Savage LLP, for her complaint herein, hereby alleges as follows:

## INTRODUCTION AND JURISDICTIONAL STATEMENT

1.   This is an action alleging violations of The Family and Medical Leave Act of 1993 ["FMLA"], 29 U.S.C. §§ 2601 *et seq.*, The Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ["FLSA"], and the New York State Labor Law § 215.

2.   The jurisdiction of the Court is invoked pursuant to 29 U.S.C. § 2617, 42 U.S.C. § 216, 28 U.S.C. § 1331, 28 U.S.C. § 1332, and the doctrine of pendent jurisdiction.

3.   Plaintiff is a citizen of New York.

4.   Defendant is a citizen of Georgia.

5.   The amount in controversy exceeds $75,000.

6.   Plaintiff demands a jury trial of this action.

## PARTIES

7.   Plaintiff Angela Oxendine is a female over the age of twenty-one (21) and a resident of Rensselaer County in the State of New York.

8.   Defendant Chamberlin Edmonds & Associates, Inc., is a corporation organized and existing by virtue of the laws of the State of Delaware with an office and principal place of business in Atlanta, Georgia.

1

9.     Plaintiff was, at all times relevant to this complaint, employed by Chamberlin Edmonds as a "Field Representative" and/or "Resolve Application Specialist" until she was terminated from employment on August 3, 2009.

10.    Defendant Chamberlin Edmonds states that it is in the business of assisting patients "through the complex application process to obtain benefits from Medicaid, Supplemental Security Income, Social Security Disability, charity care as well as other federal, state and community benefit programs." Defendant is typically hired by health care providers to assist patients in this task.

11.    Plaintiff's job duties were to make sure that patients obtained the necessary documentation and performed all acts necessary to qualify for relevant benefits and to follow up with government entities to assure that applications were ready to be and were being processed.

## FACTUAL ALLEGATIONS

12.    Plaintiff originally began working for Chamberlin Edmonds in its office at Albany Medical Center through the OfficeTeam temporary agency for $20 per hour.

13.    In August, 2007, plaintiff became a full-time employee of Chamberlin Edmonds.

14.    Plaintiff's work performance was reviewed most positively, and she received corresponding pay increases, in the period from August, 2007 through January 1, 2009.

15.    By letter dated January 28, 2009, plaintiff was advised by Chamberlin Edmonds that she was being changed from a salaried employee to an hourly employee "according to FLSA standards."

16.    Plaintiff advised Ms. Patel that she needed to consult with an attorney concerning her legal rights concerning her change in pay.

17.    In fact, plaintiff discussed the matter first with a friend who was a law student. This conversation was recorded by Ms. Patel or another person who was not a party to the conversation. As a result, the conversation, whether or not it was recorded by Ms. Patel, came to her attention.

18.     Meanwhile, plaintiff complained to her District Manager, Tennille Miller, about Ms. Patel's treatment of her.  At this time, plaintiff also raised the fact that she had been paid about $20 per hour when she was assigned by OfficeTeam to work for Chamberlin Edmonds but that her pay had been decreased when she became directly employed by Chamberlin Edmonds.  Ms. Miller increased plaintiff's pay to $20 per hour.

19.     By letter dated March 6, 2009, plaintiff, through her counsel, advised Susan Hansen of Chamberlin Edmonds' "People Services Division" that defendant owed her back pay for all overtime worked during her entire tenure with the company.  Plaintiff requested that she receive $8,794.40 in overtime pay.

20.     Subsequently, in April, 2009, plaintiff's performance was negatively appraised by Ms. Patel, who claimed that plaintiff had not taken company-offered training courses in Microsoft Word, Excel, and PowerPoint.  Plaintiff responded that she had obtained certified training prior to joining the company.  Ms. Miller agreed that plaintiff should to receive an opportunity to be tested to determine whether or not she needed the training.   However, Ms. Miller left the company, and the testing never took place.

21.     In April, plaintiff also was denied a promotion that was given to a worker from New York City who was brought in on a temporary basis.

22.     In April, plaintiff was excluded from weekly conference calls in which field representatives reported on their progress in making their production quota and received information and updates on changes in company procedures and protocols.

23.     In April, Ms. Patel began refusing to respond to questions from plaintiff or to discuss relevant information with plaintiff.   When conversing with co-workers about relevant information, she would turn her back on plaintiff.

24.     Ms. Patel's body language clearly indicated hostility toward plaintiff.

25.     By letter dated April 24, 2009, defendant, though its general counsel, accepted plaintiff's position and agreed to pay her back overtime benefits.

3

26.     By letter dated May 1, 2009, Ms. Hansen sent plaintiff a check in the amount of $4,953.00, reflecting the cash due her after applicable tax withholding.

27.     On the same date, Ms. Hansen approved plaintiff's request for 12 weeks of unpaid Family and Medical Leave (FMLA) to begin May 13, 2009 and end on August 14, 2009.

28.     Plaintiff requested FMLA leave so that she could sufficiently recover from a serious back condition which left her virtually immobilized in the absence of treatment.

29.     In furtherance of her request, plaintiff submitted the paperwork prescribed by the United States Department of Labor, which was approved by her employer.

30.     On June 8, 2009, plaintiff returned to work, with her physician's approval.

31.     On June 16, Ms. Patel, accused plaintiff of not making her quota of benefit application approvals for the month of June, though she had been at work only 8 days in June.  Plaintiff replied that she had obtained 32 approved accounts for the month, which was in excess of the required amount, and that she could prove it.  Ms. Patel asserted that it was impossible for plaintiff to have obtained such numbers, as she had been out of work, and her work ethic was less than acceptable.  Ms. Patel said she did not care what plaintiff proved.

32.     Plaintiff was extremely upset, and, to compose herself, requested and received approval from the District Manager, Pilar Garcia, to leave work early that day.

33.     Plaintiff asked Ms. Garcia if she could meet with her to discuss the events of the day. Ms. Garcia said she would not be back in Albany until after August 1, and that she would meet with plaintiff then.

34.     On August 3, 2009, plaintiff came into the office expecting to meet with Ms. Garcia, but was told by her and Ms. Patel that she was being terminated from employment.

35.     By letter dated August 31, 2009, plaintiff's counsel requested that Ms. Hansen provide "the reasons for her termination, including any documentary evidence in support of such termination" so that plaintiff could evaluate whether to pursue claims of retaliation under the FMLA and FLSA. No response to the letter was received.

## COUNT 1

36.   Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

37.   Defendant determined that Ms. Oxendine was eligible for FMLA leave.

38.   Plaintiff had her productivity criticized immediately upon her return from FMLA leave when the only plausible reason for any reduction in plaintiff's productivity was the fact that she had been on FMLA leave.

39.   There was a causal connection between the criticism of plaintiff's productivity and the termination of plaintiff's employment.

40.   Ms. Oxendine was discriminated against because she elected to exercise her right to FMLA leave in violation of §2615(a) of the FMLA.

41.   Ms. Oxendine is entitled to damages as set forth in §2617 of the FMLA, including back pay, front pay, emotional harm, liquidated damages, loss of enjoyment of life, compensatory, and other damages, together with interest thereon from August 3, 2009.

42.   Plaintiff is entitled to the reasonable attorneys' fees, costs, disbursements, and expert witness fees incurred in the prosecution of this action.

43.   Defendant's action in discriminating against Ms. Oxendine was intentional and in wanton, willful, and reckless disregard of her statutory rights because defendant wholly failed to investigate or respond to the allegations that Ms. Oxendine's termination was retaliatory.

44.   Ms. Oxendine is entitled to punitive damages.

## COUNT II

45.   Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

46.   Plaintiff was retaliated against because she made a complaint seeking unpaid overtime compensation and was in fact paid overtime compensation pursuant to such complaint.

47.   Plaintiff complained to her supervisor that she needed to seek legal counsel concerning how her pay was being determined and, as a result, her supervisor became hostile towards her.

48.   There was a causal connection between the hostility of plaintiff's supervisor towards her and the termination of plaintiff's employment.

49.     Retaliation for paying out pursuant to a meritorious claim for overtime compensation violates 29 U.S.C. § 215(a)(3) as interpreted in *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872 (2d Cir. 1988).

50.     Plaintiff is entitled to damages as aforesaid.

## COUNT III

51.     Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

52.     Plaintiff was also entitled to overtime pursuant to New York Labor Law § 652 as implemented in the regulations of the Commissioner of Labor, 12 NYCRR § 142-2.2.

53.     § 215 of the New York Labor Law provides that no employee shall be retaliated against by making a complaint to her employer that the employer has violated any provision of the Labor Law.

54.     Defendant retaliated against plaintiff in violation of § 215 of the New York Labor Law.

55.     Plaintiff is entitled to damages as aforesaid.

WHEREFORE, plaintiff demands the judgment be entered against defendant ordering, adjudging and decreeing that:

A.      Defendants violated the FMLA, the FLSA, and the New York Labor Law.

B.      Defendants reimburse plaintiff for all loss of back pay, loss of benefits, loss of earning capacity ("front pay"), and loss of savings in the amount of $750,000;

C.      Plaintiff be awarded liquidated damages in the amount of $750,000;

D.      Plaintiff be awarded damages for pain, suffering, emotional harm, and other compensatory damages in the amount of $750,000;

E.      Plaintiff be awarded interest upon the aforementioned sums from August 3, 2009 to the present;

F.      Plaintiff be awarded punitive damages in the amount of $200,000.00;

G.      Plaintiff be awarded the costs, disbursements, and expenses of this action, including reasonable attorney's fees;

H.      Plaintiff be awarded such other and further relief as the Court deems appropriate.

Dated:      Albany, New York
              April 1, 2010

                                       COOPER ERVING & SAVAGE LLP
                                       Attorneys for Plaintiff
                                       39 North Pearl Street
                                       Albany, New York 12207
                                       (518) 449-3100

                    By:

                                       Phillip G. Steck
                                       Bar Roll No. 102664